[Doc. No. 8]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

DENNIS PATTERSON,

        Plaintiff,

  v.

CITY OF WILDWOOD; SGT.
CHRISTOPHER HOWARD; PATROLMAN
KENNETH PHILLIPS; PATROLMAN
KEVIN FRANCHVILLE; PATROLMAN
DANIEL ROSIELLO,

        Defendants.

Civil No. 06-4334 (RMB)

**AMENDED OPINION**

APPEARANCES:

Alan E. Denenberg
Abramson & Denenberg, PC
1315 Walnut Street, 12th Floor
Philadelphia, PA 19107
    Attorney for Plaintiff

James R. Birchmeier
Powell, Birchmeier & Powell, Esqs.
1891 State Highway 50
P.O. Box 582
Tuckahoe, NJ 08250
    Attorney for Defendants

**BUMB**, United States District Judge:

**I.   INTRODUCTION**

    This matter comes before the Court on Defendants' motion for summary judgment.  Defendants have moved for summary judgment as to all five counts of Plaintiff's Complaint.  Plaintiff does not

oppose Defendants' motion as to Counts I, III, IV or V, but does oppose the motion as to Count II, a claim of excessive force against Sgt. Howard. (See Pl. Opp. at 1). Accordingly, Defendants are entitled to summary judgment as to Counts I, III, IV and V, and the following discussion is limited to the claim against Sgt. Howard, the only remaining Defendant.

## II.   FACTUAL BACKGROUND

This matter arises out of an incident that occurred around midnight on September 14, 2004 at the Fairview Café in Wildwood, New Jersey. (Pl. Opp. at 8). Approximately one hour after arriving at the club, Plaintiff became involved in a dispute with another patron and some of his friends over a spilled drink. (Id.). The verbal altercation escalated and Plaintiff pulled out a pocket knife, allegedly in self-defense. (Id.). One of the club bouncers who witnessed the incident came up to Plaintiff and escorted him out of the club. (Id.).

Almost immediately after Plaintiff was escorted outside, Patrolman Phillips arrived on the scene and learned what had happened. (Id.). He asked Plaintiff for the knife and Plaintiff gave it to him. (Id.). Shortly after that, Defendant Howard arrived on the scene and discussed the situation with Patrolman Phillips. (Id. at 9). Defendant then approached Plaintiff and told him he was going to be arrested. (Id.). In response,

Plaintiff threw his hands up in the air, exclaimed "f*** this sh*t," and put his hands in his pockets. (Id.). Defendant then told Plaintiff to turn around.

What happened next is highly disputed and forms the crux of Plaintiff's Complaint against Defendant. Plaintiff alleges that as he was attempting to comply with Defendant's order to turn around, Defendant grabbed Plaintiff and slammed him to the ground, face first. (Id.). Plaintiff claims he does not remember anything from the time he hit the ground until the time he was put in the back seat of the police car. (Id.). Specifically, Plaintiff testified that after he hit the ground, the next thing he remembered was "[b]eing in the back of the police car and [he] had blood all over [his] face, and [he] couldn't see out of [his] right eye, and [his] lip was busted, punched out..." (Pl. Dep. at 40:19-22).

Defendant tells a very different version of what happened. According to Defendant, when Plaintiff was told he was under arrest and ordered to turn around, Plaintiff assumed a fighting stance and refused to cooperate. (Def. Motion at 1). Plaintiff then placed his hands in his pockets and leaned against a glass window. (Id.). Defendant was concerned about Plaintiff's hands being in his pocket because Defendant "didn't know if [Plaintiff] had another weapon or not." (Def. Dep. at 55:4-5). After Plaintiff repeatedly refused to comply with Defendant's orders,

3

Defendant pulled Plaintiff away from the window and both Plaintiff and Defendant fell to the ground:

> [Plaintiff] put his hands in his pocket, his pants pocket, and I ordered him to take his hands out of his pocket and he wouldn't. I told him again that he was under arrest and we went back and forth in that way for a minute or two. When it became clear [Plaintiff] was not going to change his frame of mind and we were wasting our time and my arm had been hit out of the way, I reached out and grabbed [Plaintiff] by the collar of his jacket or his tie and pulled him away from the window and we both went to the ground.

(Def. Dep. at 54:16-55:1).

Defendant claims that even on the ground, Plaintiff continued to resist arrest - "[h]e was flailing around, swinging his arms around..." (Id. at 59:11-15). Defendant testified that he "punched Plaintiff one time" in his face "[t]o try to get him under control." (Id. at 61:10-21). After the punch, Plaintiff "stopped the flailing almost immediately" and Defendant was able "to roll him over onto his stomach and secure his hands behind his back." (Id. at 62:23-63:2). Plaintiff was handcuffed and then placed in the back of Defendant's patrol car to be taken to the police station.

Shortly after arriving at the police station, Defendant claims that Plaintiff had a breakdown and was screaming and hitting his head against the wall. (Def. Motion at 6). Apparently, Plaintiff refused to be treated by the EMT and was somewhat uncooperative with Officer Rosiello, who was trying to take down some information. (Id.). Plaintiff was searched at

the police station and another knife was found in his left front shirt pocket.  (Id. at 7).

Plaintiff was ultimately charged with aggravated assault with a weapon; threatening to commit a crime of violence; resisting arrest; possession of a controlled dangerous substance; possession of a weapon for an unlawful purpose; unlawful possession of a weapon; and being a convicted felon possessing a weapon.  (Def. Motion at 6; Pl. Opp. at 9).  Plaintiff later pled guilty to possessing a weapon with a felony conviction and all other charges were dropped.  (Pl. Opp. at 9).

As a result of the arrest, Plaintiff suffered damage to his cervical spine, damage to his right eye and nose, and a torn muscle in his shoulder, all of which have required medical care. In Count II of his Complaint, the only remaining claim, Plaintiff claims that Defendant Howard used excessive force in effectuating the arrest, thereby violating Plaintiff's Fourth Amendment rights.

**III.   STANDARD OF REVIEW**

Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A dispute is "genuine" if "the evidence is such that a reasonable jury

5

could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.  "In making this determination, a court must make all reasonable inferences in favor of the non-movant."  Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)).  "At the summary judgment stage the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.

**IV.  DISCUSSION**

Plaintiff's claim of excessive force in the context of arrest "should be analyzed under the Fourth Amendment's 'objective reasonableness standard[.]'"  Saucier v. Katz, 533 U.S. 194, 204 (2001) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)).  The Supreme Court has held that,

> [b]ecause "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation," the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective.

6

Id. at 205 (quoting Graham, 490 U.S. at 397).  Thus, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Graham, 490 U.S. at 396 (internal citation and quotations omitted).  The reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.

Defendant asserts that he is entitled to qualified immunity on Plaintiff's excessive force claim.  The Third Circuit has held that in order to receive the benefits of qualified immunity,

> a court must first decide whether the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002) (citing Saucier, 533 U.S. at 201).  If so, the court next determines whether the constitutional right in question was clearly established.  Id. at 277 (citing Saucier, 533 U.S. at 201).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity.  Id. at 205.

Couden v. Duffy, 446 F.3d 483, 492 (3d Cir. 2005).

Accordingly, in evaluating the qualified immunity issue, this Court must first ask whether the facts, taken in a light

most favorable to Plaintiff, show that Defendant deprived Plaintiff of a constitutional right. Saucier v. Katz 533 U.S. 194, 201 (2001). If the answer is yes, the Court must then ask if that constitutional right was clearly established at the time of the events in question – i.e., "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. This task must be "undertaken in light of the specific context of the case." Id. at 201. If Defendant made a reasonable mistake as to what amount of force was legal in those circumstances, he is entitled to the qualified immunity defense. Id. at 206.

The parties dispute whether Plaintiff was resisting arrest and whether he was unconscious while on the ground. Plaintiff asserts that when Defendant told him he was under arrest and ordered him to turn around, Plaintiff attempted to comply with the order, but Defendant "grabbed [him] by the collar and into the - to the ground [he] went." (Id. at 43:5-6). Plaintiff further claims that when he was slammed to the ground, he hit the ground face first and was momentarily knocked unconscious. Thus, Plaintiff argues, it was unreasonable for Defendant to punch Plaintiff in the face.

Defendant contests Plaintiff's version of the facts and claims that Plaintiff was resisting arrest. Specifically, Defendant asserts that Plaintiff assumed a fighting stance and

8

had to be pulled away from a glass window, which caused both Plaintiff and Defendant to fall to the ground. Defendant further claims that once on the ground, Plaintiff was not unconscious but, rather, continued to resist arrest by flailing his arms about. At that point, Defendant punched Plaintiff in the face one time to subdue him.

In determining whether a constitutional violation occurred, the Court must take the facts in the light most favorable to Plaintiff and make all reasonable inferences in his favor. However, the Court need not accept Plaintiff's version of the facts to the extent it is contradicted by the evidence in the record. Indeed, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 127 S. Ct. 1769, 1776 (2007).

Here, Plaintiff's account of what happened is clearly contradicted by the evidence in the record. Plaintiff claims that he does not remember anything from the time he hit the ground until the time he was put in the back seat of the police car. Thus, he asserts, a jury "could infer from this fact that the Plaintiff was momentarily knocked out when he hit the ground" and, so, unconscious when Defendant punched him. (Pl. Opp. at 8)

9

(emphasis added).  However, in the video taken of Plaintiff when he was in the back seat of the police car, Plaintiff says that he "does not like being punched in the face."  (See video, Def. Motion, Ex. G).  Contrary to Plaintiff's suggestion, the reasonable inference from this statement is that Plaintiff was not unconscious when he was punched in the face, as he was able to recall the punch while sitting in the police car.  Indeed, Plaintiff offers no explanation as to how he knew, when sitting in the back of the car, that he had been punched in the face by Defendant a few minutes earlier.  Moreover, Plaintiff's demeanor and manner of speech as shown in the video suggest that he was intoxicated at the time.  Thus, Plaintiff's inability to remember what happened may be attributed to intoxication, as opposed to unconsciousness.

    Plaintiff's claim of unconsciousness is further contradicted by the testimony of the club bouncer, an independent witness to the arrest.  In his recorded statement, the bouncer stated that Plaintiff was resisting arrest while on the ground and was not cooperative with the officers at all:

> Q:   ...what...what did you see?
>
> A:   I mean, [Plaintiff] was...he went down to the ground...and he was just rolling on the ground just...
>
> Q:   Well, how did he go down to the ground I mean what...what did you see about the whole incident?
>
> A:   ...I...they put him on the ground ta...

> Q:   Okay, the police officers did?
>
> A:   ...the police officers put him on the ground ta cuff him...
>
> Q:   Right.
>
> A:   ...then he start rolling around on the ground and then yeah know the ... they tried to ah ... ah...what's the word I wanna use they tried ta...they tried to subdue him so they could get the cuffs on him but...
>
> Q:   Right.
>
> A:   ...he...he was still resisting that part...

(Recorded Statement of Joseph Giandonato (Def. Motion, Ex. D) at 11-12).

Given the evidence in the record, this Court concludes that no reasonable jury could find that Plaintiff was unconscious while on the ground.  Rather, the evidence shows that Plaintiff actively resisted arrest and Defendant acted reasonably to subdue him.[1]  Therefore, no constitutional violation occurred and Defendant is entitled to summary judgment on this charge.

---

[1] In addition to the fact that Plaintiff was resisting arrest, other factors support the objective reasonableness of Defendant's actions.  First, Defendant believed that Plaintiff posed an immediate threat to the safety of himself and others.  The officers had already confiscated a knife from Plaintiff and Defendant was unsure whether Plaintiff was still armed, as Plaintiff refused to take his hands out of his pockets.  Second, the crime at issue was violent - Plaintiff had allegedly pulled a knife on the victim inside the club.  Taken together, these facts confirm that Defendant acted reasonably by subduing Plaintiff using appropriate force.  See Graham, 490 U.S. at 396.

**V.  CONCLUSION**

    For the aforementioned reasons, this Court holds that Defendants' motion for summary judgment is granted as to all Counts.  An appropriate Order will issue this date.


Dated:  June 3, 2008          s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   UNITED STATES DISTRICT JUDGE