**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

_____ :
                                 :
DENNIS PATTERSON,                :      HONORABLE RENÉE MARIE BUMB
                                 :
         Plaintiff,              :      Civil No. 06-4334 (RMB/AMD)
                                 :
         v.                      :
                                 :
SGT. CHRISTOPHER HOWARD,         :      **OPINION**
                                 :
                                 :
                                 :
         Defendant.              :
_____ :

## I.    Introduction

Defendant seeks to exclude the testimony of Plaintiff's treating physician, Dr. Manish Singh, based on Plaintiff's failure to produce a report or accompanying documents as required by Fed.R.Civ.P. 26(a)(2)(B).  Plaintiff seeks to exclude evidence that he was drinking and/or intoxicated, that a second pocket knife was found on his person at the police station and the admission of a videotape taken at the police station ("the booking tape").  For the reasons set forth on the record on March 15, 2010, when the Court decided the motions, and more specifically set forth below, the motions are granted in part and denied in part.

## II.   Background

Plaintiff alleges that during the course of his September

2004 arrest in Wildwood, New Jersey, Sergeant Christopher Howard[1] used excessive force.

###### A.   The Incident at Fairview Café

On the early morning of September 14, 2004, Plaintiff was escorted out of the Fairview Café after Plaintiff pulled out a pocketknife, allegedly in self-defense, during a dispute with another patron.  See Amended Opinion Granting Summ. J., June 3, 2008 at 2.  Plaintiff alleges that the dispute arose over a spilled drink.  Id.

Once outside, Plaintiff turned over the knife to Patrolman Kenneth Phillips upon the officer's request.  Id.  Defendant, Sergeant Christopher Howard, arrived at the scene, discussed the incident with Phillips and informed Plaintiff that he was under arrest.  Id.  Plaintiff alleges that an altercation broke out between himself and Sergeant Howard, which forms the basis for Plaintiff's excessive force claim.

###### B.   Plaintiff's Allegations of Excessive Force

Plaintiff alleges that he was attempting to comply with Sergeant Howard's instructions when, "[Sergeant] Howard, without cause or provocation, slammed the Plaintiff to the ground,

---

[1]    Plaintiff did not oppose Defendants' Motion for Summary Judgment as to the other Defendants originally named in this suit.  Accordingly, the City of Wildwood, Patrolman Kevin Franchville and Patrolman Daniel Rosiello were granted summary judgment as to all claims asserted against them.  See June 3, 2008 Amended Opinion at 1-2.  Only Plaintiff's excessive force claim against Sergeant Howard remains.

causing him to hit the concrete face first." <u>See</u> Joint Final
Pre-Trial Order at 3.  "As a result of hitting the concrete face
first, the Plaintiff was rendered momentarily unconscious." <u>Id.</u>
"While on the ground, without provocation or cause, Sergeant
Howard hit Plaintiff in the face." <u>Id.</u>

### C.   **Sergeant Howard's Testimony Regarding the Incident**

Regarding the incident, Sergeant Howard testified at
deposition that he "didn't know if [Plaintiff] had a weapon or
not."  Howard Dep. 55:4-5, June 28, 2007.  He further testified
that

> [Plaintiff] put his hands in his pocket, his pants pocket,
> and I ordered him to take his hands out of his pocket and he
> wouldn't.  I told him again that he was under arrest and we
> went back and forth in that way for a minute or two.  When
> it became clear [Plaintiff] was not going to change his
> frame of mind and we were wasting our time and my arm had
> been hit out of the way, I reached out and grabbed
> [Plaintiff] by the collar of his jacket or his tie and
> pulled him away from the window and we both went to the
> ground.

<u>Id.</u> at 54:16-55:1.

Sergeant Howard intends to show that "[w]hile on the ground,
the Plaintiff was striking and flailing his arms at anything in
the area, including [Sergeant] Howard and Officer [Kevin]
Franchville, who were attempting to handcuff the Plaintiff." <u>See</u>
Pre-Trial Order at 5.  "[Sergeant] Howard punched the Plaintiff
one time in the head or face in order to get the Plaintiff under
control." <u>Id.</u>  The bouncer, Joseph Giandonato, "saw that the
Plaintiff was bleeding from his nose" and saw that "the Officers

3

were trying to handcuff him." Id.

**D.    The Second Pocket Knife**

The parties do not dispute that prior to being arrested, Plaintiff voluntarily turned over a pocketknife to the Wildwood police. See Pre-Trial Order at 2. Plaintiff concedes that "[t]here is . . . no dispute that after the arrest, another small pocketknife was found on the Plaintiff." Pl. Motion in Limine Br. at 1. The parties also stipulated that "[p]laintiff was in possession of two (2) knives when he entered the Fairview Café." Pre-Trial Order at 2. Sergeant Howard intends to show that "[a]t the Police Station, a second knife was found in the Plaintiff's shirt pocket. It was a pocketknife which was open with an approximate three (3") inch blade." See Pre-Trial Order at 5.

**E.    The Video at the Police Station**

A video was taken of the Plaintiff at the police station. Defendant asserts that "there are portions of the booking tape which show the Plaintiff banging his head against a cement wall which could explain some of the Plaintiff's alleged injuries." Def. Opp Br. at 5. Defendant intends to offer the video to show that "[w]hile in the booking room, the Plaintiff began smacking his head into the wall and began screaming." Pre-Trial Order at 5.

**F.    Plaintiff Pled Guilty to a Weapons Charge**

The parties have stipulated that "[a]s a result of the

4

incident, Plaintiff was arrested, and charged with possession of

a weapon for unlawful purposes, resisting arrest, aggravated

assault, possession of a controlled substance, threats of

violence and certain persons not to have weapons." <u>Id.</u> at 3.

The parties further stipulated that "[t]he Plaintiff pled guilty

to the certain persons not to have weapons charge and all of the

other charges were dismissed." <u>Id.</u>

### F. Plaintiff Seeks to Offer His Treating Physician, Dr. Manish Singh, as an Expert

Dr. Manish Singh is a neurologist who treated Plaintiff for

injuries that Plaintiff allegedly sustained from the altercation

with Sergeant Howard.  Pl. Opp. Br. at 1.  Plaintiff's counsel

provided Defendant with Dr. Singh's treatment notes in June 2007.

<u>Id.</u>  On July 11, 2007, Judge Donio entered an Amended Scheduling

Order directing that

> All experts' reports on behalf of plaintiff shall be
> served upon counsel for defendants not later than October
> 15, 2007.  All experts' reports on behalf of defendants
> shall be served upon counsel for plaintiff no later than
> October 31, 2007.  Each such report should be accompanied by
> the <u>curriculum</u> <u>vitae</u> of the proposed expert witness.  No
> expert opinion testimony shall be admitted at trial with
> respect to any witness for whom this procedure has not been
> timely followed.  Depositions of proposed expert witnesses
> shall be concluded by November 30, 2007.

> For purposes of this Scheduling Order, <u>treating</u>
> <u>physicians shall not be considered expert witnesses</u> and
> shall be treated as fact witnesses who are, however,
> required to provide reports and records concerning their
> treatment.  <u>However, any doctor who is going to express an</u>
> <u>opinion as to the cause of a particular condition or as to</u>
> <u>the future prognosis of a particular condition, shall be</u>
> <u>considered an expert subject to the requirement of Fed. R.</u>

Civ. P. 26(a)(2)(B).

See Docket No. 7 (emphasis added).

Plaintiff notified Defendant that Plaintiff may call all treating physicians as expert witnesses by letter dated October 23, 2007.  Def. Br. at 3; Pl. Opp. Br. at 1.  On November 9, 2007, defense counsel objected to Plaintiff's expert notice letter and noted that Defendant had not been provided with any reports or copies of a curriculum vitae ("CV") for any proposed expert.  Def. Br. at 3.

As of the date that Defendant filed his Motion to Preclude Dr. Singh's testimony, February 5, 2010, Plaintiff had not produced a report or CV for Dr. Singh.  Def. Br. at 3.  Plaintiff did attach a copy of Dr. Singh's CV and a report dated February 16, 2010 to his Opposition Brief, which was filed that same day.  See Pl. Br. Ex. A & B.  As to the impact of the alleged excessive force incident on Plaintiff, Dr. Singh states that "[Dennis Patterson] reported that he was locked up by cop and dragged to detain [sic] and this is what aggravated his pain" and that the "[p]atient reported trauma on June 2004[2], which may have aggravated his symptoms."  See Pl. Opp. Motion, Ex. B.

_____

[2]    Although Dr. Singh's report refers to an incident that occurred in June 2004, the alleged incident giving rise to Plaintiff's claim took place in September 2004.  Plaintiff commenced treatment with Dr. Singh on October 19, 2004.  See Pl. Opp. Motion, Ex. B.

## III. Analysis

### A.   Defendant's Motion to Bar the Testimony of Dr. Singh

Defendant seeks to bar Plaintiff from introducing the testimony of Dr. Singh, Plaintiff's treating physician, arguing that the admission of such testimony would cause unfair surprise. It is not clear from Plaintiff's submission, or from Dr. Singh's report, what expert testimony Plaintiff seeks to elicit from Dr. Singh.   Dr. Singh's report is a summary of the fifteen pages of treatment notes provided to Defendant in June 2007.   For the reasons that follow, the Court will limit Dr. Singh's testimony to only that which is based on Dr. Singh's examination, diagnosis and treatment of Mr. Patterson.   Dr. Singh will not be permitted to testify regarding causation, future prognosis or permanency.

### 1.   Standard

"Trial judges are afforded wide discretion in making rulings on the admissibility of evidence." Quinn v. Consolidated Freightways Corp. of Del., 283 F.3d 572, 576 (3d Cir. 2002)(citing Hurley v. Atlantic City Police Dept., 174 F.3d 95, 110 (3d Cir. 1999), cert. denied, 528 U.S. 1074 (2000); Fuentes v. Reilly, 590 F.2d 509, 511 (3d Cir. 1979)).   However, "[t]he exclusion of critical evidence is an `extreme' sanction, not normally to be imposed absent a showing of willful deception or `flagrant disregard' of a court order by the proponent of the evidence." Id. (quoting Meyers v. Pennypack Woods Home Ownership

<u>Ass'n</u>, 559 F.2d 894, 905 (3d Cir. 1977), <u>overruled on other</u>
<u>grounds as recognized by</u> <u>Goodman v. Lukens Steel Co.</u>, 777 F.2d
113, 118 (3d. Cir. 1985)).

Factors to be considered when considering the exclusion of
evidence include:

> (1) the prejudice or surprise in fact of the party against
> whom the excluded witnesses would have testified; (2) the
> ability of that party to cure the prejudice; (3) the extent
> to which waiver of the rule against calling unlisted
> witnesses would disrupt the orderly and efficient trial of
> the case or other cases in the court; and (4) bad faith or
> wilfulness in failing to comply with the district court's
> order.

<u>Id.</u> at 576-77 (citing <u>Konstantopoulos v. Westvaco Corp.</u>, 112 F.3d
710, 719 (3rd Cir. 1997), <u>cert. denied</u>, 522 U.S. 1128 (1998);
<u>Meyers</u>, 559 F.2d at 904-905).

> **2.   The Court Will Permit Dr. Singh's Testimony As A
> Treating Physician But Will Not Permit Him to
> Testify Regarding Causation, Future Prognosis or
> Permanency**

As required by Fed. R. Civ. P. 26(a)(2)(A), Defendant was on
notice as of October 23, 2007 that Plaintiff "may" call all of
Plaintiff's treating physicians as expert witnesses.  Def. Br. at
3.  The parties' Pre-Trial Order, filed on January 28, 2010, was
more specific and indicated that Plaintiff intended to call two
witnesses as treating physicians <u>and</u> medical experts:  Dr.
Michael Dudnick[3], an E.R. physician, and Dr. Manish K. Singh.

---

[3]     At the time the Court entered its ruling as to the
within motion, the Defendant had not moved to exclude the expert
testimony of Dr. Dudnick.  During the course of trial, Plaintiff

See Pre-Trial Order at 7.  Defendant objected to Plaintiff
calling "medical providers . . . due to the fact that the
Plaintiff has failed to comply with the Court's previous
Scheduling Orders concerning the production of reports from
experts and/or treating physicians" and formally moved to exclude
the testimony on February 5, 2010.  See Id. at 8; Def. Motion in
Limine.  As noted, only after Defendant filed his Motion in
Limine did Plaintiff attach a copy of Dr. Singh's CV and Dr.
Singh's report to Plaintiff's opposition brief.  See Pl. Opp. Br.
Ex. A & B.

     However, "treating physicians are not required to submit
expert reports when testifying based on their examination,
diagnosis and treatment of a patient." Mracek v. Bryn Mawr
Hosp., 610 F.Supp.2d 401, 406 (E.D.Pa. 2009) (citing Edwards v.
Scott Paper Co., No. 96-5631, 1997 WL 288578, at *2  (E.D.Pa. May
23, 1997)), aff'd, No. 09-2042, 2010 WL 318372 (3d Cir. Jan. 28,
2010); see also Fed.R.Civ.P. 26 1993 advisory committee's note to
Subdivision (a), Paragraph (2) ("[a] treating physician, for

---

sought to introduce Dr. Dudnick's testimony, which Defendant then
sought to preclude.
     The Defendant argued that counsel had been told in an e-mail
that Plaintiff would not be calling Dr. Dudnick.  The Court
permitted Dr. Dudnick to testify, however, because Defendant had
been on notice that Dr. Dudnick treated the Plaintiff and because
the e-mail in question advised Defendant's counsel that Dr.
Dudnick would not be called as an expert.
     For the same reasons that the Court limited Dr. Singh's
testimony, the Court also limited Dr. Dudnick's testimony.

example, can be deposed or called to testify at trial without any requirement of a written report"). Plaintiff provided Defendant with "reports and records concerning [Plaintiff's] treatment" as required by the Amended Scheduling Order. See Docket No. 7. And the Court's Order required only that "any doctor who is going to express an opinion as to the cause of a particular condition or as to the future prognosis of a particular condition, shall be considered an expert subject to the requirement of Fed. R. Civ. P. 26(a)(2)(B)." Id.

Plaintiff seeks to use Dr. Singh to elicit testimony regarding the cause of Mr. Patterson's condition or his future prognosis. However, Dr. Singh's report offers no opinion as to causation, permanency or future prognosis. The most that Dr. Singh opines as to the impact of the alleged excessive force incident on Plaintiff is what the Plaintiff, himself, told Dr. Singh, that is that "[Dennis Patterson] reported that he was locked up by cop and dragged to detain [sic] and this is what aggravated his pain" and that "[p]atient reported trauma on June 2004, which may have aggravated his symptoms." See Pl. Opp. Motion, Ex. B.

Were Plaintiff to call Dr. Singh to testify regarding causation, permanency or future prognosis, this report clearly fails to comply with Fed.R.Civ.P. 26(a)(2)(B) and the Court's Amended Scheduling Order. That is, the report and CV provided to

10

Defendant do not contain:

> (I) a complete statement of all opinions the witness will
> express and the basis and reasons for them; (ii) the data or
> other information considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support
> them; (iv) the witness's qualifications, including a list of
> all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous
> four years, the witness testified as an expert at trial or
> by deposition; and (vi) a statement of the compensation to
> be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B).  "A party must make these disclosures

at the times and in the sequence that the court orders."

Fed.R.Civ.P. 26(a)(2)(C).  Where a party fails to provide the

information required by Fed.R.Civ.P. 26(a), Fed.R.Civ.P. 37(c)(1)

provides that, "the party is not allowed to use that information

or witness to supply evidence on a motion, at a hearing, or at a

trial, unless the failure was substantially justified or is

harmless."

    Plaintiff notes in a footnote that he is not bound by the

Amended Scheduling Order's requirement that he produce a report

in compliance with Fed.R.Civ.P. 26(a)(2)(B) because Dr. Singh was

a treating a physician, not a witness "retained or specially

employed to provide expert testimony in the case." Pl. Opp. Br.

at 6 n.1.  Plaintiff cites to <u>Stern v. United States District</u>

<u>Court</u>, 214 F.3d 4, 13 (1 st Cir. 2000), for the proposition that

the Court's Order cannot conflict with the requirements set forth

in Fed.R.Civ.P. 26(a)(2)(B).  <u>Id.</u>  What Plaintiff means to say is

that the Order cannot conflict with the exception for witnesses

not "retained or specially employed to provide expert testimony" set forth in Fed.R.Civ.P. 26(a)(2)(B). The <u>Stern</u> case, however, grappled with the question of whether the district court had the power to adopt a local rule for that district, an issue not relevant here.

Rather, Plaintiff presumes that the Court's Order conflicts with Fed.R.Civ.P. 26(a)(2)(B) by requiring additional disclosures. This is not so. Plaintiff ignores the introductory wording of Fed.R.Civ.P. 26(a)(2)(B), which states "[u]nless otherwise stipulated or ordered by the court." Moreover, the Advisory Committee Note accompanying Rule 26 states that "[t]he enumeration in Rule 26(a) of items to be disclosed does not prevent a court from requiring by order or local rule that the parties disclose additional information without a discovery request." Fed.R.Civ.P. 26 1993 Advisory Committee's Note to Subdivision (a).

Here, the record reveals that Defendant was aware in June 2007 that the Plaintiff might be calling his treating physicians, one of which was Dr. Singh. Thus, because Defendant was aware that Plaintiff intended to call Dr. Singh, the Court will permit Plaintiff to elicit testimony that is based on Dr. Singh's examination, diagnosis and treatment of Mr. Patterson. Indeed, the report offered by Dr. Singh is a summary of Plaintiff's treatment notes, a total of fifteen pages that were produced to

12

Defendant in June 2007.

The Court will not, however, permit Plaintiff to elicit testimony from Dr. Singh regarding the cause of Mr. Patterson's condition, permanency of his injuries or Mr. Patterson's future prognosis.  First, Plaintiff failed to meet this Court's requirement of providing a report compliant with Fed.R.Civ.P. 26(a)(2)(B).  More importantly, Dr. Singh does not opine on the issues of causation, permanency or future prognosis in the report provided to counsel.  The most Dr. Singh offers as to the impact of the alleged excessive force incident on Plaintiff is what the Plaintiff self-reported, that is that "[Dennis Patterson] reported that he was locked up by cop and dragged to detain [sic] and this is what aggravated his pain" and that "[p]atient reported trauma on June 2004 which may have aggravated his symptoms."  See Pl. Opp. Br., Ex. B.  The Court finds that permitting Dr. Singh to testify beyond his report on the eve of trial would cause Defendant unfair surprise and undue prejudice. At this late date, Defendant is unable to cure this prejudice.

**B.    Plaintiff's Motion to Bar Evidence of Plaintiff's Intoxication, a Second Pocketknife and the Video Taken at the Jail**

Plaintiff argues that evidence that he was drinking or intoxicated is unfairly prejudicial and should be excluded pursuant to Fed.R.Evid. 403.  Plaintiff further argues that evidence that he possessed a second pocketknife should be

13

excluded because it is irrelevant to Sergeant Howard's knowledge at the time of the alleged incident and because it is also unfairly prejudicial.  Finally, Plaintiff argues that a video taken at the jail after Plaintiff's arrest is both irrelevant and unfairly prejudicial.

> ### 1.   The Court Will Permit Sergeant Howard's Testimony Regarding Plaintiff's Intoxication

As noted, "[t]rial judges are afforded wide discretion in making rulings on the admissibility of evidence," Quinn, 283 F.3d at 576.  "[A] district court's ... discretion is construed especially broadly in the context of Rule 403." United States v. Kemp, 500 F.3d 257, 295 (3d Cir. 2007)(quoting United States v. Mathis, 264 F.3d 321, 326-27 (3d Cir. 2001), cert. denied, 535 U.S. 908 (2002)), cert. denied, 128 S.Ct. 1329 (2008). Fed.R.Evid. 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Plaintiff argues that evidence that he was intoxicated or drinking would be unfairly prejudicial.  Plaintiff's excessive force claim, however, is analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989).  This standard "requires careful attention to the facts and circumstances of each particular case, including

14

the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> at 396 (citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 8-9 (1985) ("the question [is] whether the totality of the circumstances justifie[s] a particular sort of ... seizure")).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene . . . ." <u>Id.</u> (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 20-22 (1968)).

As noted in Plaintiff's Motion in Limine brief, Sergeant Howard described Plaintiff as intoxicated at his deposition.  <u>See</u> Howard Dep. at 48:17-22.  Because this testimony goes to the heart of Sergeant Howard's on-scene perspective at the time that force was used against Plaintiff, the Court cannot conclude that the risk of prejudice outweighs the testimony's probative value.  Moreover, as acknowledged in Plaintiff's brief, Plaintiff is free to introduce his own testimony and that of Joseph Giandonato, the bouncer who escorted Plaintiff from the Fairview Café, to state that Plaintiff was not or did not appear to be intoxicated.  <u>See</u> Patterson Dep. at 26:21-23; 36:6-9, June 28, 2007; Giandonato Statement at 13, September 15, 2004.

### 2. At This Time, the Court Will Not Permit Evidence that a Second Knife Was Recovered from Plaintiff

As noted, in an excessive force claim, the relevant inquiry

15

is whether the use of force was justified under the "totality of the circumstances." See Garner, 471 U.S. at 8-9.  The Third Circuit has acknowledged that "'[t]otality' is an encompassing word.  It implies that reasonableness should be sensitive to all of the factors bearing on the officer's use of force." Abraham v. Raso, 183 F.3d 279, 291 (3d. Cir. 1999).  Again, factors to be considered when weighing the reasonableness of an officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

Here, the parties stipulated that "[p]laintiff was in possession of two (2) knives when he entered the Fairview Café." Pre-Trial Order at 2.  Plaintiff, however, seeks to exclude evidence that the second pocketknife was recovered at the police station after his arrest pursuant to Fed.R.Evid. 403.  The fact that parties have stipulated to the admission of evidence, however, does not deprive the trial court of power to exclude it under Fed.R.Evid. 403.  Noel Shows, Inc. v. United States, 721 F.2d 327, 330 (11th Cir. 1983).  "The question of whether evidence should be admitted is a matter of law for the trial court to determine, and that determination is not restricted by the stipulation of the parties." Id. (citing C.B. Wright v. Hartford Accident & Indemnity Co., 580 F.2d 809, 810 (5th Cir.

16

1978)); see also In re Mintze, 434 F.3d 222, 228 (3d Cir. 2006)
(citing Kraft Gen. Foods, Inc. v. Iowa Dep't of Rev. & Fin., 505
U.S. 71, 85 (1992))(courts are "not bound by the parties'
stipulations concerning questions of law").

The Court agrees that evidence of the second knife does not
bear on the circumstances actually known to Sergeant Howard at
the time of the alleged incident.  The fact that a second knife
was found should not be used as subsequent justification for
Sergeant Howard's use of force because the relevant question is
whether Howard's force was reasonable in light of the situation
Howard confronted, i.e., "the reasonableness of [defendant's]
acts must be judged from the perspective of a reasonable officer
on the scene."  See Third Circuit Model Civil Jury Instructions §
4.9.  The fact that the knife was found in Mr. Patterson's pocket
at the police station and after his arrest suggests that Sergeant
Howard was not aware of the knife at the time of the arrest and
that Mr. Patterson did not attempt to use or reach for the knife,
which would otherwise bear on the question of whether Mr.
Patterson posed an immediate threat to the safety of Sergeant
Howard or others.  As the Court cautioned at the time of its
ruling, however, it would revisit the issue if Plaintiff "opened
the door" during his direct testimony.[4]

---

[4]     Plaintiff clearly "opened the door" during his direct
testimony.

### 3.  The Court Reserves on the Issue of the Video Showing Plaintiff at the Police Station

Plaintiff seeks to exclude the introduction of a video taken of Plaintiff at the police station, arguing that the video is not relevant to any legal issue and would be highly prejudicial. The Court agrees that the video cannot be offered to support the reasonableness of Sergeant Howard's use of force because, as noted, such force must be judged from the perspective of a reasonable officer on the scene.

Defendant, however, asserts that "there are portions of the booking tape which show the Plaintiff banging his head against a cement wall which could explain some of the Plaintiff's alleged injuries."  Def. Opp Br. At 5.  Contrary to Plaintiff's assertion that the Pre-Trial Order demonstrates that Defendant will take the position that Plaintiff sustained his injuries as a result of falling before the alleged incident with Sergeant Howard, see Pl. Br. At 4, Defendant intends to offer the video to show that "[w]hile in the booking room, the Plaintiff began smacking his head into the wall."  Pre-Trial Order at 5.

As the Court ruled at the beginning of trial, the Court reserved its decision pending the Plaintiff's testimony.[5]

---

[5]     The Court subsequently allowed this testimony because Plaintiff clearly "opened the door" during his direct testimony.

**IV.  Conclusion**

For the aforementioned reasons, and for the reasons set forth on the record on March 15, 2010, the parties' Motions in Limine are granted in part and denied in part.


Dated: March 18, 2010          s/Renée Marie Bumb
                               RENÉE MARIE BUMB
                               UNITED STATES DISTRICT JUDGE